## GEORGE W. LEONARD *v.* LEVI BELKNAP, JR.

### *Trover. Conversion. Practice.*

If one's fowls mingle with his neighbors, he has a right to his own, though he cannot identify them all; and an offer by his neighbor to deliver him those he can identify, and any others he may select, to a certain number, but less than he claims, and less than his testimony tends to show him entitled to, which he refuses, will not satisfy such right; and a refusal to so charge, is not error.

And if his neighbor shut up the whole flock, against his will, and refuse to let them at large, to see if his can be identified, it is the exercise of such dominion over them, in exclusion or defiance of his right, as to amount to a conversion.

If the finding of the jury is such that a party receives no detriment from a refusal to charge as requested, such refusal is no ground of error.

TROVER for ten turkeys. Plea, not guilty, and trial by jury, December term, 1873, BARRETT, J., presiding.

The plaintiff gave evidence tending to prove, that in the season of 1872, he had a flock of turkeys consisting of one old turkey and nine young ones, and that this was his number in June, and remained the same through the season; that his turkeys roosted mostly in his orchard, some twenty rods from his buildings, and that they strayed away some onto his neighbors' fields, but that he frequently counted them, and his number of ten was always there; that in October his turkeys were gone two or three weeks, and he did not know where they were, and about the first of November he noticed them roosting on defendant's fence about twenty rods from defendant's house, and he counted them and his number of ten was there; that he knew them by the old turkey and by a brick-colored turkey, and that they were roosting by themselves; that they continued to roost in the same place, and that he counted them several times, until they were shut up by the defendant as hereinafter stated; that on the 9th of November, defendant's son came and informed plaintiff that defendant had shut up his turkeys, and wanted plaintiff to come and select them out; that he went to defendant's and found he had his turkeys shut up with defendant's turkeys in his barn; that plaintiff could not identify but two of his turkeys, the old one and the brick-colored one, by any mark, but claimed that he could identify all of them by their following his old one, if the defendant would let them loose from the barn, and so informed the defendant; that defendant told him he had in the barn only five turkeys more than his number, and intended to keep his number good, and that the plaintiff might take the two that he could identify, and select three more, but that he declined to do so, and told defendant he claimed ten turkeys; that he asked defendant to let the turkeys out, and see if they would separate, but the defendant declined to do so, saying he had trouble in getting them in, and plaintiff offered to get them back into the barn without trouble to defendant; that in the evening of the same day, he went to defendant's house and told the defendant that if he would let the turkeys out, and his old turkey took with her any other number than nine, he

would take the number defendant would give him, and defendant declined to do so ; and plaintiff offered to get them back into the barn without trouble to defendant.

The defendant gave evidence tending to prove, that he had twenty-six turkeys the season of 1872, after they got partly grown, and that his number remained the same through the season ; that he fed them daily at his house, and frequently counted them, and that they roosted most of the time near his house ; that some time in September, a flock of turkeys came upon his premises consisting of two old turkeys and seven young, and that one of them was brick-colored; that they remained around upon his premises, and about the middle of October they became mixed with his flock, and after that time they ran together and fed together as one flock, making thirty-five turkeys in the flock, which he frequently counted ; that after they mixed together, the whole flock roosted on the fence where the plaintiff testified he saw and counted his turkeys ; that the fore part of November, Azro Davis, a neighbor, informed him that four of said turkeys belonged to him, one old one and three young, which he identified by their toes being cut off, and he purchased the same of said Davis, leaving in his flock five turkeys which did not belong to him, one old one, the brick-colored one, and three other young ones ; that the day before he shut up the turkeys, in his absence from home, he was informed that plaintiff came to his house and drove away ten turkeys, and giving evidence tending to show this fact, and that some of the turkeys thus driven away belonged to him; that the next morning they were back on his premises again ; that he fixed his barn and shut up the whole flock of thirty-five, and sent word to plaintiff to come and get his turkeys ; that plaintiff came to defendant's, and defendant told him to go into the barn and pick out his turkeys, and plaintiff asked him how many of his turkeys he had, and defendant replied five, that is, that he had only five more than his number ; the plaintiff then said he ought to have ten, and that he could identify but two, the old one and the brick-colored one, but claimed they could be identified if let loose to follow the old one, and defendant told him he could have the two he could identify, and might pick out any other three he saw fit, and that

the plaintiff declined to do so ; that there was nothing said at this time about letting the turkeys out and see if they would separate ; that in the evening of the same day, plaintiff came to defendant's and proposed to defendant to let the turkeys out in the morning, and let them go to roost, and if plaintiff's old turkey took a less number than nine with her, he would take up with the five which the defendant had offered him, and defendant told him this would be no fair test, as the turkeys all roosted together, and more than nine would go with the old turkey. After this suit was commenced, defendant selected out the old turkey and the brick-colored one, which the plaintiff could identify, and three others as good as he could find, and notified plaintiff to come and get his turkeys, as he could not keep them any longer, and plaintiff replied that he would as soon have the money ; that after that, defendant sold the turkeys and offered plaintiff the money, which he declined to take. The defendant further gave evidence tending to prove, that before plaintiff's turkeys came upon the defendant's premises, they had become mixed with a small flock belonging to said Davis, and ran together as one flock. The plaintiff and defendant were near neighbors. This suit was commenced Nov. 12, 1872.

The defendant requested the court to charge the jury as follows : 1. That defendant having offered to deliver to the plaintiff five turkeys, and the plaintiff having refused to receive the same, defendant was not liable therefor in this action. 2. That if the jury found that plaintiff had more than five turkeys with defendant's flock, and that they could not be identified by plaintiff, and plaintiff and defendant could not distinguish them from defendant's turkeys, that then there was no testimony in the case tending to show a conversion of the same by the defendant prior to the commencement of this suit. The court declined to charge as requested, and charged that it was for the jury to find upon the evidence whether the plaintiff was the owner of more than the two turkeys that he could identify, and if so, how many, that were shut up in defendant's barn ; that when they had determined how many turkeys belonged to the plaintiff there, then it was for the jury to settle the question of conversion ; that if plaintiff's

turkeys were with defendant's, defendant had no right to shut them up and keep them from plaintiff; but if plaintiff was consenting to thus having them shut up, that would be no conversion; but when plaintiff dissented from thus having them shut up, defendant would have no right to keep them longer; that when plaintiff gave the defendant to understand—"I don't consent to your keeping my turkeys shut up,"—the defendant after that would have no right to keep them; if he did keep them, that would be a conversion; that if when plaintiff went up there after the defendant sent him word about it, defendant made an unconditional offer to let plaintiff have all the turkeys he owned, and plaintiff refused to have them—would have nothing to do about it—would not have them—virtually giving the defendant to understand, " I consent to your keeping them "—expressed no dissent to his keeping them—the keeping of them thereafter, under such circumstances, would not be a conversion; but if, on the other hand, defendant declined to let them out except upon certain conditions that plaintiff would not agree to, that would give the defendant no right to keep them; that defendant was not authorized to impose conditions as terms upon which he would let them out that plaintiff was bound to assent to, short of letting plaintiff have the turkeys that belonged to him; that if, therefore, in what was passing between defendant and plaintiff after defendant got the turkeys shut up, defendant was holding on to them unless plaintiff would consent to take a brick-colored turkey and one old one and three others, to be selected in full for his claim for the turkeys that belonged to him, if he was making that a condition on which he would let out the turkeys, or let the plaintiff have the turkeys, and because the plaintiff would not accede to it, he continued to keep them, his keeping them would be a conversion in fact of the turkeys that belonged to the plaintiff. Verdict for the plaintiff for $8.00 for five turkeys.

The jury found specially that plaintiff's turkeys would have separated and been distinguished if defendant had let the turkeys out of the barn as requested by plaintiff.

A large amount of testimony was given on both sides on the question of whether, if the turkeys had been let out of defendant's

barn as plaintiff requested, the turkeys that belonged to plaintiff would have separated from the rest, so as to have been identified truly in that way. It appeared that plaintiff requested defendant to let all the turkeys out of the barn, claiming and offering as aforesaid as to his turkeys separating so as to be identified ; that defendant declined to let them out as requested, but offered to let plaintiff take the two that he could identify, and to select three others, to make up the five, the plaintiff claiming that he owned ten. The charge was full upon all points and aspects of the case, and satisfactory in all respects not excepted. To the charge as given, and to the refusal to charge as requested, the defendant excepted.

*W. C. French*, for the defendant.

We insist that this action cannot be maintained, and that we were entitled to the instructions asked for. It is a clear case of confusion of goods, without the fault of either party, and they become *tenants in common* of the entire flock, in proportion to their respective interest. 2 Bl. Com 405 ; 2 Kent Com. 365 ; 1 Hilliard Torts, 550; *Holbrook et al.* v. *Hyde*, 1 Vt. 286 ; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 108 ; *Belt & Church* v. *Lee*, 5 Johns. 348 ; *Shumway* v. *Rutter*, 8 Pick. 443 ; *Ryder* v. *Hathaway*, 21 Pick. 298 ; *Wingate* v. *Smith*, 7 Shep. 287. Nothing short of destruction of the property owned in common, will amount to a conversion for which one tenant in common can maintain an action of trover against the other. *Tubbs* v. *Richardson*, 6 Vt. 442 ; *Hurd* v. *Darling et als.* 14 Vt. 214 ; *Sanborn* v. *Morrill*, 15 Vt. 700.

The testimony did not tend to show a conversion of the turkeys by defendant, and the charge of the court in this respect was error. 2 Greenl. Ev. § 642 ; 2 Hilliard Torts, 112. A mere omission of duty in respect to property, or *non-feasance*, is not a conversion. 1 Chit. Pl. 178 ; *M'Combie* v. *Davies*, 6 East, 538 ; *Bowlier* v. *Nye*, 10 Cush. 416 ; *Abbott* v. *Kimball et al.* 19 Vt. 551 ; *Nutt* v. *Wheeler*, 30 Vt. 436 ; *Tinker* v. *Morrill et al.* 39 Vt. 477 ; *Farrar* v. *Rollins,* 37 Vt. 295. Defendant had a right to shut up the flock of turkeys, and keep them shut up ; and the

fact that plaintiff's turkeys were with the flock, was not his fault, and could not amount to a conversion. 2 Hilliard Torts, 114. A demand and refusal are not evidence of a conversion, unless the defendant is in such condition that he might have delivered the property if he would. *Irish* v. *Cloyes & Moore*, 8 Vt. 32 ; *Rice* v. *Clark*, 8 Vt. 109 ; *Knapp et al.* v. *Winchester*, 11 Vt. 351 ; *Yale* v. *Saunders et al.* 16 Vt. 243 ; *Tinker* v. *Morrill et al., supra.* The demand must apply to *specific property*, so that the defendant could deliver the same, or it will not be evidence of conversion. 2 Hilliard Torts, 121, 122 ; *Abington* v. *Lipscomb*, 1 Q. B. 776. The finding by the jury shows that the plaintiff was in the *wrong* when he claimed ten turkeys, and that the defendant was in the *right* when he offered him five. Defendant did not claim to hold or control plaintiff's five turkeys, and requested plaintiff to take them away.

*D. C. Denison & Son* and *J. J. Wilson*, for the plaintiff.

Defendant was not entitled to his first request. Plaintiff was entitled to his own five turkeys, and defendant cannot compel him to exchange for others ; and the jury found that by letting the turkeys out, plaintiff could have had his own five, which finding settles the matter.

Defendant was not entitled to his second request, because the jury found that the turkeys could have been identified by letting them out, which finding settles the matter.

The shutting up of plaintiff's turkeys by defendant, and retaining them in defendant's possession after the expressed dissent of plaintiff, was a conversion. 2 Saund. 479 ; *Gleason* v. *Owen*, 35 Vt. 590 ; *Tinker* v. *Morrill et al.* 39 Vt. 477 ; *Gragg* v. *Hall*, 41 Vt. 217. The offer of five turkeys, as made by defendant, did not avoid the conversion, for the plaintiff was entitled to his own if they could be identified, and the jury found they could be by letting them out so that they could separate. 2 Saund. 479, note g.

The opinion of the court was delivered by

Ross, J. The defendant was not entitled to have his first request complied with. The plaintiff had the right to have his own

turkeys delivered to him. The defendant could not satisfy this right by offering to deliver him five other turkeys, although they might be more valuable than those which the plaintiff owned. The plaintiff's evidence tended to show that he owned more than five turkeys which were in the possession of the defendant. In this state of the evidence, it would have been error in the court to have told the jury as requested, that the plaintiff could not recover because the defendant had offered to deliver him five turkeys which he had refused to receive. It is the duty of the court to adapt its instructions to the jury to the evidence in the case. There was no error in the refusal of the court to charge as first requested.

By the second request, the defendant does not claim that he is entitled to the instruction therein desired, unless the jury should find that neither the plaintiff nor the defendant could distinguish the plaintiff's turkeys from the defendant's turkeys. The jury have found that if the turkeys had been let out, the plaintiff's turkeys would have separated from the defendant's, so they could have been identified. Hence, if the defendant was entitled to have had this request complied with, if the jury had found what he assumes in the request, they must find that plaintiff's turkeys could not be distinguished from the defendant's. He has not, as the jury have determined this preliminary fact against him, received any detriment by the refusal of the court to comply with the request. This fact which the jury have found against the defendant, shows there was no such confusion or commingling of the property of the parties, as would defeat the plaintiff's right to maintain trover. Hence, the authorities cited by the defendant's counsel in reference to the effect of a confusion or commingling of goods, are inapplicable.

The defendant also claims there was error in the charge of the court as given, in that it made the shutting up of the plaintiff's turkeys by the defendant, against the plaintiff's consent, and a refusal to let them out when requested by the plaintiff only on conditions imposed by himself, a conversion of the turkeys. He claims that such act of the defendant and refusal to act, are but nonfeasances, or a

mere neglect of duty, and do not amount to a conversion of the turkeys. We think that the defendant, by shutting up the plaintiff's turkeys against his will, and by refusing to let them out when requested, was exercising acts of dominion over them—was in fact appropriating them to his own use. He was within Mr. Greenleaf's definition of what acts amount to a conversion, as cited by the defendant's counsel, "exercising dominion over the turkeys, in exclusion or defiance of the plaintiff's right." We think there was no error in the charge of the court.

Judgment affirmed.